IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DAVID SHEMTOV,

    Defendant.

CRIMINAL ACTION NO.

1:21-cr-123-JPB-CMS

## **O R D E R**

Two motions are currently before the Court: Defendant David Shemtov's Motion to Strike Surplusage [Doc. 25] and his Motion for a Bill of Particulars [Doc. 24].

## I. **INTRODUCTION**

On April 6, 2021, a grand jury sitting in the Northern District of Georgia returned an eight-count indictment against Defendant David Shemtov, charging him with eight counts of wire fraud. [Doc. 1, "Indictment"]. The Indictment alleges that between October 2019 and December 2020, Shemtov devised, attempted to devise, and intended to devise a scheme and artifice to defraud the Victim Company through a trade-in/buyback program for certain electronic devices. [*Id.* ¶¶ 1–18]. According to the Indictment, the program allowed individuals to trade in electronic devices, such as Apple iPhones, in exchange for Apple gift cards. [*Id.* ¶¶ 3–6]. The trade-in

value of the electronic devices depended on the characteristics of the electronics to be traded.  [*Id.*].  The online form and the trade-in process were managed and administered by a company identified in the Indictment as "the Victim Company." [*Id.*].

The Indictment alleges that Shemtov submitted online trade-in requests as part of the trade-in process described above, and in doing so, he falsely represented that the device models he would be sending for trade were newer than the models that he intended to (and did) submit.  [Indictment ¶¶ 7–18].  By way of example, the Indictment alleges that more than 900 of Shemtov's trade-in requests claimed to have an iPhone XS Max with 64 gigabyte capacity to trade in, for a value of $545, but in reality, the devices he submitted were older versions of iPhones that had trade-in values of $30.  [*Id.* ¶ 10].  The Indictment alleges that "most or all" of the devices that Shemtov submitted were in the "locked" setting, allowing him to take advantage of the fact that the Victim Company's systems were not set up to revise its quoted value downward after receiving a device in the locked setting that was worth less than what was represented on the trade-in request form.  [*Id.* ¶ 11].  As a result of Shemtov's alleged misrepresentations, the Victim Company provided Apple gift cards to Shemtov that exceeded the value of the devices he submitted for trade-in. [*Id.* ¶ 11].  The Indictment charges eight counts of wire fraud based on six

submissions of online trade-in request forms (Counts One through Six) and based on two telephone calls to the Victim Company's call-in center (Counts Seven and Eight). [*Id.* ¶ 18].

Shemtov has filed several motions, including a Motion to Strike Surplusage [Doc. 25] and Motion for a Bill of Particulars [Doc. 24].

## II.    <u>MOTION TO STRIKE SURPLUSAGE</u>

In his Motion to Strike Surplusage, Shemtov asks the Court to strike Paragraphs 13 through 17 of the Indictment. Those paragraphs provide:

> 13. SHEMTOV was personally enriched by the Apple gift card payments made directly as a result of this scheme.

> 14. Eventually, the Victim Company detected the scheme and stopped sending gift cards for the fraudulently claimed trade-in values.

> 15. The Victim Company also learned to detect trade-in requests believed to be part of the scheme before it mailed out boxes, and it stopped sending boxes in response to those trade-in requests.

> 16. From in or about March 2020 through in or about December 2020, SHEMTOV submitted and caused to be submitted more than 1,000 additional trade-in requests using more than 100 fictious [sic] names as part of the scheme to defraud the Victim Company. The Victim Company flagged these requests and did not send boxes to complete the trade-ins.

> 17. During the scheme, SHEMTOV called the Victim Company's call-in center multiple times to inquire about the status of the anticipated Apple gift cards. The Victim Company's call-in center is located in the

Northern District of Georgia. The calls originated outside the state of Georgia.

[Indictment ¶¶ 13–17].

Rule 7 of the Federal Rules of Criminal Procedure provides that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c). It also provides that a criminal defendant may move to strike portions of the indictment that go beyond the bare minimum: "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." FED. R. CRIM. P. 7(d). In the Eleventh Circuit, motions to strike surplusage from an indictment are subject to a "most exacting standard" and require a two-part showing that the allegations (1) are not relevant to the charge and (2) are inflammatory and prejudicial. *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (internal quotations and citation omitted).

In his motion to strike surplusage, Shemtov argues that the allegations in each of these paragraphs are irrelevant and that the Paragraph 16 allegation (that between March and December 2020, Shemtov unsuccessfully made "more than 1,000 additional trade-in requests using more than 100 [fictitious] names") would "inflame the jury" against him. [Doc. 25 at 2–4].

I begin by noting that Shemtov does not address the second prong of the test (i.e., that the allegations be inflammatory and prejudicial) in connection with his challenge to Paragraphs 13, 14, 15, or 17. Rather, he argues only that these allegations serve no legitimate purpose and are unnecessary to the jury's fair consideration of the charged offenses. [Doc. 25 at 2–3]. In the absence of an argument that these allegations are inflammatory and prejudicial, I will deny the motion with respect to these paragraphs on this basis.[1]

As for the allegation in Paragraph 16—that between March 2020 through December 2020, Shemtov allegedly submitted "more than 1,000 additional trade-in requests using more than 100 [fictitious] names as part of the scheme to defraud the Victim Company"—Shemtov claims that it is irrelevant because it occurred after the six submissions of trade-in request forms charged in Counts One through Six and

---

[1] Although I have not addressed the relevancy prong of the test with respect to these allegations, the Government has done so in its response brief. Specifically, the Government states Paragraph 13 is relevant to the alleged fraud scheme because it goes directly to Shemtov's motive and purpose for executing the scheme (i.e., to personally enrich himself) [Doc. 34 at 5]; that Paragraphs 14 and 15 explain how the Victim Company took steps to protect itself from the ongoing illegal activity after the fraud was detected, and they provide context and background [*id.* at 5–6]; and that Paragraph 17 provides background and context on how Shemtov executed the scheme and details about the jurisdictional nexus required for wire fraud charges [*id.* at 6].

because these trade-in requests were not actually accomplished. [Doc. 25 at 3]. The Government responds that the timeframe referenced in Paragraph 16 (March 2020 through December 2020) is within the timeframe of the scheme alleged in Paragraph 1 of the Indictment (October 2019 through December 2020). [Doc. 34 at 7]. Additionally, the Government argues that the allegation regarding the attempted fraud set forth in Paragraph 16 is relevant because "it tells the story of the continuing scheme to defraud." [*Id.* at 8]. As for the claim that Paragraph 16 is irrelevant because these attempts were unsuccessful, the Government correctly argues that the wire fraud statute punishes the scheme, not the success of the scheme. [*Id.*].

At this early point in the case, it appears that the allegation in Paragraph 16 is relevant because the submissions referenced in this paragraph reflect an attempt to continue the fraudulent scheme described in the Indictment, and they occurred within the time frame alleged in the Indictment. Thus, even assuming that the allegation is inflammatory and prejudicial, the motion to strike must be denied because the legal standard requires that the allegation be both irrelevant ***and*** inflammatory and prejudicial. As such, I will deny this motion.[2]

---

[2] Although Shemtov has not met the "exacting standard" that would warrant the granting of the motion at this time, he may move to strike the language before the Indictment is provided to the jury, if he believes that the Government either fails

## III.   MOTION FOR A BILL OF PARTICULARS

Shemtov has also filed a motion for a bill of particulars in which he complains about several aspects of the Indictment, and he asks the Court to order the Government to provide more detail with respect to twelve categories of information, as follows:

(a) the facts alleged in paragraphs 5 and 6 are irreconcilable with those alleged in paragraphs 11 and 12;

(b) the indictment does not allege a specific date range;

(c) the indictment does not list the "elsewhere" districts in which the fraud was allegedly committed;

(d) the indictment does not name the Victim Company;

(e) the indictment does not state whether the Victim Company (consistent with its own policy) made attempts to have Shemtov unlock the locked devices he allegedly submitted before making a redemption offer;

(f) the indictment does not state whether, or how, the locked devices allegedly submitted were inspected by the Victim Company before an offer of redemption was made;

(g) the indictment does not state which model Shemtov actually submitted to the Victim Company in the six referenced confirmation numbers;

_____

to provide factual support for this allegation at trial, or if the allegation is otherwise found to be irrelevant to the charged offenses.  *See Awan*, 966 F.2d at 1426.

(h) the indictment does not state any falsehood or misrepresentation made by Shemtov during the February 3 and 4 telephone calls to the Victim Company call center in counts seven and eight;

(i) the indictment does not explain how the February 3 and 4 telephone calls were material to the success of the alleged scheme;

(j) the indictment does not inform the defense of the trade-in confirmation numbers associated with the alleged 1,400 fraudulent trade-in requests that the government intends to prove at trial;

(k) the indictment does not identify the model description of the devices actually submitted by Shemtov in these alleged transactions; and

(l) the indictment does not provide the "more than 100 fictitious names" that the government intends to associate with Shemtov in the alleged 1,000 additional trade-in requests that were flagged but not supplied trade-in boxes.

Shemtov argues that this information is material to the preparation of his trial defense and that given the massive discovery in the case, the Government should be ordered to provide clarity regarding these issues. [Doc. 24].

"The purpose of a true bill of particulars is threefold: to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (internal quote marks and citation omitted). Thus, a bill of particulars "supplements an indictment by providing the defendant

with information necessary for trial preparation," but generalized discovery "is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill." *Id.* "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars. . . . A mere statement that the defendant will be prejudiced without the bill is insufficient." *United States v. Baitcher*, No. 1:11-CR-536-SCJ-AJB, 2013 WL 1501462, at *1 (N.D. Ga. Mar. 22, 2013) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998)).

A bill of particulars is not appropriate when the Government has already provided the necessary information in other sources, such as the indictment or discovery. *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986), *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986). The purpose of a bill of particulars is not to compel the Government to provide details of its legal evidence or explain its legal theories. *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006). Furthermore, a bill of particulars cannot be used to "compel the government to provide the essential facts regarding the existence and formation of a conspiracy." *Rosenthal*, 793 F.2d at 1227. The Government is not required to provide exact dates of when a defendant joined a conspiracy, *United States v. Torres*, 901 F.2d 205, 233–34 (2d Cir. 1990), nor is the Government required to give specific

acts or overt acts that a defendant did in furtherance of a charged conspiracy. *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990).

Here, Shemtov's bare-bones motion has not shown that a bill of particulars is necessary to inform him of the charges, to minimize any surprise at trial, or to enable him to plead double jeopardy in the event of a later prosecution for the same offense. The Indictment identifies the statutes allegedly violated, the dates and federal district in which the allegedly unlawful conduct occurred, the approximate beginning and end dates of the alleged scheme and the substantive counts, and provides additional information about the execution of the scheme. Moreover, the Government states that it has provided Shemtov with "fulsome" discovery, including law enforcement investigative reports, bank records, email search warrant returns, shipping records, audio recordings, records from the Victim Company, and several other pieces of evidence relevant to this case. [Doc. 33 at 5]. According to the Government, the discovery was provided in a searchable format complete with an index that identifies the categories of documents provided, the source of the documents provided, and the bates ranges for each category of documents. [*Id.*]. The Government states that early on, it provided defense counsel with a spreadsheet that itemized the more than 1,400 phones that Shemtov traded in and that itemized the type of phone, the model number, the date of the trade, and the location from where the phone was mailed.

The Government also states that it provided records from the mailbox companies that Shemtov allegedly used to effectuate trade-ins. [*Id.* at 5–6]. Finally, the Government states that to the extent the discovery could be considered "massive," the bulk of it consists of search warrant returns from Shemtov's own email accounts. [*Id.* at 6]. Notably, Shemtov has not filed a reply brief challenging the accuracy of any of the Government's assertions.

Upon review of Shemtov's specific requests, I conclude that they are either unclear, not appropriate for a bill of particulars, or impermissibly seek a roadmap into the Government's case. Shemtov is not entitled to an exposition of the Government's evidence or an explanation of its legal theories. *See Roberts*, 174 F. App'x at 477. I agree with the Government that Shemtov has not made the requisite showing of entitlement to a bill of particulars. *See Rosenthal*, 793 F.2d at 1227.

## IV.   CONCLUSION

Shemtov's Motion to Strike Surplusage [Doc. 25] is **DENIED** without prejudice to his right to renew the motion at the time of trial.  His Motion for a Bill of Particulars [Doc. 24] is also **DENIED**.

**SO ORDERED**, this 23rd day of August, 2022.

Catherine M. Salinas
United States Magistrate Judge