IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID SHEMTOV,<br><br>Defendant. | CRIMINAL ACTION NO.<br><br>1:21-cr-123-JPB-CMS |

## **REPORT AND RECOMMENDATION**

Defendant David Shemtov's Motion to Dismiss the Indictment [Doc. 23] is before the Court. For the reasons that follow, I will recommend that it be denied.

## **I.     INTRODUCTION**

On April 6, 2021, a grand jury sitting in the Northern District of Georgia returned an eight-count indictment against Shemtov, charging him with eight counts of wire fraud. [Doc. 1, "Indictment"]. The Indictment alleges that between October 2019 and December 2020, Shemtov devised, attempted to devise, and intended to devise a scheme and artifice to defraud the Victim Company through a trade-in/buyback program for electronic devices. [*Id.* ¶¶ 1–18]. According to the Indictment, the program allowed individuals to trade in electronic devices, such as Apple iPhones, in exchange for Apple gift cards. [*Id.* ¶¶ 3–6]. The trade-in value of the electronic devices depended on the characteristics of the electronics to be

traded. [*Id.*]. The online form and the trade-in process were managed and administered by a company identified in the Indictment as "the Victim Company." [*Id.*].

The Indictment alleges that Shemtov submitted online trade-in requests as part of the trade-in process described above, and in doing so, he falsely represented that the device models he would be sending for trade were newer than the models that he intended to (and did) submit. [Indictment ¶¶ 7–18]. By way of example, the Indictment alleges that more than 900 of Shemtov's trade-in requests claimed to be an iPhone XS Max model with 64 gigabyte capacity to trade in, for a value of $545, but in reality the devices he submitted were older versions of iPhones that had trade-in values of $30. [*Id.* ¶ 10]. The Indictment alleges that "most or all" of the devices that Shemtov submitted were in the "locked" setting, allowing him to take advantage of the fact that the Victim Company's systems were not set up to revise its quoted value downward after receiving a device in the locked setting when the device was worth less than what was represented on the trade-in request form. [*Id.* ¶ 11]. As a result of Shemtov's alleged misrepresentations, the Victim Company provided Apple gift cards to Shemtov that exceeded the value of the devices he submitted for trade-in. [*Id.*]. The Indictment charges eight counts of wire fraud based on six submissions of online trade-in request forms (Counts One

through Six) and two telephone calls placed to the Victim Company's call-in center (Counts Seven and Eight). [*Id.* ¶ 18].

In his motion to dismiss, Shemtov argues first that all of the counts should be dismissed because the Indictment fails to establish a "scheme to defraud" as required by 18 U.S.C. § 1343, and alternatively, that Counts Seven and Eight should be dismissed because the Indictment fails to allege that the telephone calls either relayed a falsehood or were material to the scheme. [Doc. 23].

## II. <u>DISCUSSION</u>

Federal Rule of Criminal Procedure 12 authorizes the district court to dismiss a criminal charge for "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). In ruling on such a motion, "a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in the original) (reversing trial court's dismissal of an indictment charging the defendants with mail fraud and conspiracy to launder proceeds of mail fraud). In ruling on a motion to dismiss, the allegations in the indictment are treated as true. *See United States v. Fitapelli*, 786 F.2d 1461, 1463 (11th Cir. 1986) ("In judging the sufficiency of the indictment, the court must look to the allegations and,

taking the allegations to be true, determine whether a criminal offense has been stated.") (citation omitted).

At this stage in the litigation, the Court's role is limited to determining whether the indictment is legally sufficient. A legally sufficient indictment must (1) present the essential elements of the charged offense, (2) notify the accused of the charges against him, and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. *See United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009). "In determining whether an indictment is sufficient, we read it as a whole and give it a common sense construction." *Id.* (citations and internal quote marks omitted).

An indictment, however, must also include enough facts to inform the defendant of the specific offense that the Government is charging. *United States v. Bobo*, 344 F.3d 1076, 1083–84 (11th Cir. 2003) ("An indictment that requires speculation on a fundamental part of the charge is insufficient."). But the indictment need not allege in detail the factual proof that the Government intends to rely upon to support the charges. *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978).

The Eleventh Circuit has repeatedly held that unlike the procedural rules governing civil cases, the Federal Rules of Criminal Procedure contain no mechanism for a pre-trial determination of the sufficiency of the evidence, and motions seeking such relief in criminal cases are improper. For example, in *United States v. Critzer*, the Eleventh Circuit stated:

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.

951 F.2d 306, 307 (11th Cir. 1992) (per curiam).

**A. The Indictment alleges a scheme to defraud.**

As noted above, the Indictment alleges eight counts of wire fraud in violation 18 U.S.C. § 1343.[1] The wire fraud statute provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures,

---

[1] The Indictment also charges violations of 18 U.S.C. § 1349, which provides: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 1349.

5

or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The first paragraph of the Indictment tracks this wording, as follows:

> Beginning on a date unknown, but by at least in or about October 2019, and continuing to a date unknown, but until at least in or about December 2020, in the Northern District of Georgia and elsewhere, the defendant, DAVID SHEMTOV, knowingly devised, attempted to devise and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material.

[Indictment ¶ 1].

As summarized above, the Indictment goes on to describe the scheme by which Shemtov induced the "Victim Company" to remit inflated payments for trade-ins of electronic devices. [Indictment ¶¶ 2–17]. Next, the Indictment alleges that Shemtov made eight "wire communications" in furtherance of the scheme by submitting six fraudulent online trade-in request forms during the last three months in 2019 (Counts One through Six) and by placing two telephone calls to the Victim Company's call-in center in February 2020 (Counts Seven and Eight) for the purpose of executing and attempting to execute the scheme and with the intent to

defraud.  [Indictment ¶ 18 (alleging that Shemtov caused "the signals and sounds" described in each of the eight counts set forth later in the paragraph to be transmitted by means of wire communication in interstate commerce "with the intent to defraud" and "for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud")].  Finally, the Indictment alleges that Shemtov used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme when he used the Internet and telephone in furtherance of the scheme.  [*Id.* ¶ 7 (alleging that each trade-in request constituted a wire transmission submitted electronically to the Victim Company from outside the state of Georgia); ¶ 18 (alleging that with respect to each of the eight events set forth later in the paragraph, Shemtov "cause[d] to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each transmission constituting a separate count")].

Reading the Indictment as a whole and giving it a commonsense construction, I conclude that the Indictment presents the essential elements of the crime of wire fraud, notifies Shemtov of the charges against him, and protects him from double jeopardy.  Thus, the Indictment is legally sufficient.  *See Jordan*, 582 F.3d at 1245.

In his motion, Shemtov does not assert that the Indictment lacks sufficient detail to apprise him of the charges or to defend against double jeopardy. Rather, Shemtov argues that the Government's case against him fails as a matter of substantive law, because the facts alleged in the Indictment show only a scheme to deceive, rather than a scheme to defraud. [Doc. 23 at 5]. In support of this argument, Shemtov relies on the Eleventh Circuit decision in *United States v. Takhalov*, 827 F.3d 1307, 1313-14 (11th Cir. 2016), arguing that an alleged scheme, no matter how deceptive, can meet the standard for criminal fraud only if it deprives the victim of some essential element of a bargain. [Doc. 23 at 5–7].

In *Takhalov*, the Government accused several nightclub owners of wire fraud based on activities such as pouring vodka into their patrons' beer to get them more drunk, misrepresenting the prices of drinks, and forging customers' signatures. *Takhalov*, 827 F.3d at 1310. To entice men to come into the clubs, the defendants hired Eastern European women—known as "B-girls"—to pose as tourists, locate visiting businessmen, and lure them into the defendants' nightclubs. *Id.* The defendants denied engaging in the fraudulent activities inside the clubs, but they did not dispute either that they used the B-girls to lure the men into the clubs or that the B-girls concealed from the men their relationship with the clubs. *Id.* The defendants essentially agreed that by using the B-girls, they had tricked the men

8

into coming into the clubs, but they maintained that it was a legitimate business practice. *Id.* At the conclusion of the trial, and fearing that the jury might convict them of wire fraud based on the B-girls' actions alone, the defendants requested the following jury instruction:

> Failure to disclose the financial arrangement between the B-girls and the Bar, in and of itself, is not sufficient to convict a defendant of any offense.

*Id.* at 1310. The trial judge refused to give this instruction, stating that it was not a correct statement of law. *Id.* at 1311. During closing arguments, the Government argued that when the B-girls concealed their bar affiliation from the men, the B-girls were making material misrepresentations sufficient to constitute fraud. *Id.* In other words, the Government argued that the jury could convict the defendants of wire fraud based solely on the lies of the B-girls.

On appeal, the Eleventh Circuit approved of the defendants' proposed instruction, concluding that it was an accurate statement of the law and stating:

> For § 1343 forbids only schemes to *defraud*, not schemes to do other wicked things, *e.g.*, schemes to lie, trick, or otherwise deceive. The difference, of course, is that deceiving does not always involve harming another person; defrauding does. That a defendant merely "induce[d] [the victim] to enter into [a] transaction" that he otherwise would have avoided is therefore "insufficient" to show wire fraud.

*Takhalov*, 827 F.3d at 1310 (italics in the original) (citing *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987)). The Court went on to discuss the difference between deceiving and defrauding: "to *defraud*, one must intend to use deception to cause some injury; but one can *deceive* without intending to harm at all." *Id.* at 1312 (italics in the original) (citing dictionary definitions). Ultimately, the Eleventh Circuit remanded the case for re-trial due to the district court's failure to give the defendants' requested instruction. *Id.* at 1325.

Here, Shemtov argues that the Victim Company maintained unilateral control of the value assessment because, according to the Indictment, the Victim Company extended offers to redeem only "[a]fter the device [wa]s unlocked and inspected." [Indictment ¶ 6]. Shemtov points out that there is no allegation that he misrepresented the value of the phones, refused to unlock the phones, or prevented the Victim Company from returning the locked phones to him, nor is there any allegation that the "locked" condition of the phones ever precluded the Victim Company from determining what model the device was before it extended an offer to redeem. [Doc. 23 at 7]. According to Shemtov, the alleged deception induced the Victim Company only to engage in a transaction (i.e., send him a box in which to submit the device) and that it was up to the Victim Company to decide whether to extend an offer and how much to pay, after the Victim Company had the

opportunity to inspect the unlocked device. [*Id.* at 8–9 (citing Paragraphs 5 and 6 of the Indictment); Doc. 40 at 2]. According to Shemtov, the fraudulent trade-in forms that he is alleged to have submitted had nothing to do with the Victim Company's evaluation of the bargain. [Doc. 40 at 2]. Shemtov claims that the Victim Company got exactly what it paid for after it had the opportunity to inspect the submitted devices and extend offers for payment. [*Id.*].

I find Shemtov's reliance on *Takhalov* misplaced for two important reasons. First, *Takhalov* involved a jury instruction, not a pretrial motion to dismiss, and it did not alter the pleading standards for a criminal indictment. *See Takhalov*, 827 F.3d at 1311. While Shemtov may argue at trial that it was not fraud to merely submit the forms, now is not the time for such arguments. *See United States v. Seay,* No. CR 321-001, 2021 WL 3577422, at *3 (S.D. Ga. Aug. 12, 2021) (rejecting *Takhalov* argument in the context of a motion to dismiss); *United States v. Holland*, No. 1:17-CR-00234-AT-CMS, 2018 WL 8838863, at *5 (N.D. Ga. Sept. 6, 2018) (same). The determination that I have been tasked with making is whether the Indictment is legally sufficient "from its face." *See Sharpe*, 438 F.3d at 1263. The purpose of a motion to dismiss is to point out defects in the indictment—such as the failure to allege all the elements of a crime or the failure to include sufficient detail to allow the defendant to prepare a defense. Shemtov's arguments do not address

such pleading deficiencies, but rather present a theory of defense, which is not a proper purpose of a pretrial motion to dismiss.[2]

Second, even setting aside the procedural posture of the case, the misrepresentations at issue in this case appear to be precisely the kind of lies that *Takhalov* made clear do amount to fraud. Shemtov is accused of lying "about the characteristics" of the electronic devices that he traded in. He is accused of submitting fraudulent trade-in requests that "purported to have newer, higher-valued devices, typically an iPhone XS Max," when, in fact, the Apple iPhones traded in were older models. [Indictment ¶¶ 7, 8]. Shemtov is accused of intending to trade in devices less valuable than the higher-valued devices bearing the model numbers identified in the trade-in requests. [*Id.* ¶ 9]. The Indictment alleges that Shemtov "well knew and had reason to know that the model numbers submitted on the Internet trade-in request form were inaccurate, and that by submitting forms with the wrong model number, the Victim Company would provide Apple gift cards that exceeded the value of the devices to be traded in." [*Id.* ¶ 12]. In *Takhalov*, the

---

[2] In its motion, Shemtov indirectly suggests that the Victim Company is to blame for its loss due to its own negligence, and the parties disagree as to whether this is a valid defense. [Doc. 35 at 7–8; Doc. 40 at 3]. Such negligence is not evident from the face of the Indictment, and therefore, it is not an appropriate basis for pretrial dismissal of the Indictment.

deception regarding the B-girls arguably involved merely a "tricky" or "wicked" business practice that was ancillary to the illegal scheme.  Here, on the other hand, the deception of which Shemtov is accused appears to fall squarely in the heartland of fraud.  In any event, it is for the jury to decide whether the Government has proven a scheme to defraud and whether Shemtov's misrepresentations on the forms were material to the scheme.  *See United States v. Detling*, No. 1:18-CR-00309-LMM-LTW-1, 2019 WL 3006623, at *6 (N.D. Ga. Apr. 30, 2019), *report and recommendation adopted*, No. 1:18-CR-309-LMM-LTW, 2019 WL 2284726 (N.D. Ga. May 29, 2019) (collecting cases).

For these reasons, I will recommend that Shemtov's motion to dismiss all the Counts for failure to allege a scheme to defraud be denied.

**B. Counts Seven and Eight are sufficiently alleged.**

While the first six counts of the indictment address submissions of online trade-in request forms made during the last three months of 2019, the last two counts concern telephone calls that occurred later—one telephone call made on February 3, 2020 (Count Seven) and the other made on February 4, 2020 (Count Eight).  The Indictment identifies the following telephone calls:

| Count | Date (on or about) | Wire Communication |
|---|---|---|
| 7 | Feb. 3, 2020 | Telephone call to the Victim Company's call-in center inquiring about the device trade-in with confirmation # 30832254780 |
| 8 | Feb. 4, 2020 | Telephone call to the Victim Company's call-in center by caller claiming to be named Joseph, inquiring about the device trade-in with confirmation # 30224598737 |

[Indictment ¶ 18].

Shemtov argues that Counts Seven and Eight should be dismissed because the Indictment fails to allege that he made any misrepresentations of fact in those telephone calls and/or that the telephone calls were material to the alleged scheme, which he contends was concluded by the time the phone calls occurred. [Doc. 23 at 10]. Shemtov complains that the Government has failed to explain what is unlawful about the calls and that there is a "lack of detail concerning the role that the calls played in the alleged scheme." [*Id.* at 10; Doc. 40 at 5]. Shemtov argues that because these calls were made after the trade-in forms were submitted, it is unclear how the later phone calls were material to the scheme. Relying on *United States v. Bobo*, 344 F.3d 1076 (11th Cir. 2003), he states that it is not clear from the face of the Indictment exactly what the Government is contending was unlawful about the telephone calls. [Doc. 23 at 10]. Finally, Shemtov argues that each count

14

of an indictment must stand on its own content, and he claims that standing alone, these counts fail as a matter of law.[3] I disagree.

Here, the Indictment is structured so that all eight counts are alleged to be part of the same scheme. The Indictment contains a single background section [Indictment ¶¶ 2–6] and describes a single scheme [*id.* ¶¶ 7–17]. The eight counts are presented in a single chart within a single paragraph—Paragraph 18. [*Id.* ¶ 18]. Thus, each of the "Wire Communications" set forth in Paragraph 18's chart (which includes the two telephone calls identified in Count Seven and Count Eight quoted above) is alleged to have been done "for the purpose of executing" the sole scheme described in the Indictment and was done "with the intent to defraud." [*Id.*].

By structuring the Indictment in this manner, the Government has alleged a nexus between the background facts, the details of the scheme, and each of the wire communications, including the two telephone calls at issue. The fact that the Indictment does not set forth in detail exactly how the two phone calls identified in Count Seven and Count Eight are tied to the scheme described earlier in the Indictment is not a reason to issue a pretrial dismissal of these counts. *See Crippen*,

---

[3] Tellingly, Shemtov does not claim that he is unaware of the content of these calls or is otherwise unable to defend charges arising from the calls.

15

579 F.2d at 342 ("An indictment, to be sufficient, must allege that the defendant committed each of the essential elements of the crime charged so as to enable the accused to prepare his defense and to invoke the double jeopardy clause in any subsequent prosecution for the same offense. . . . It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges."); *United States v. Rhame*, No. 1:16-cr-00067-SCJ-CMS, 2017 WL 9474218, at *6 (N.D. Ga. Sept. 29, 2017) (rejecting an argument that wire fraud counts were not sufficiently detailed, stating that the indictment "tracks the language of the relevant [statutes], and it includes sufficient detail to place Defendants on notice of the allegations against them and to defend against double jeopardy. This is all that the law requires.").

*Bobo* is distinguishable from this case because in that case, the defective indictment failed to mention an essential element of the crime (i.e., fraud in connection with the delivery or payment of health care benefits, items, or services) and failed to specify whether the defendant was allegedly trying to defraud the government program of benefits, items, services, or money. 344 F.3d at 1084. As such, the Eleventh Circuit held that the indictment was fatally flawed in connection with those counts because they required "speculation on a fundamental part of the

16

charge." *Id.* Here, there are no such flaws in the Indictment, and there is no need to speculate about what the Government is alleging.

As discussed above, the allegations in the Indictment set forth all of the elements necessary to, if proven, establish the crime of wire fraud. By identifying the exact telephone calls (including the date and the confirmation number), the allegations provide Shemtov with the requisite detail to prepare a defense and protect against double jeopardy. As such, Counts Seven and Eight are sufficiently alleged. *See United States v. Bickers*, No. 1:18-CR-98-SCJ-LTW, 2019 WL 7559292, at *12 (N.D. Ga. Sept. 17, 2019).

## III. <u>CONCLUSION</u>

For the reasons stated, I **RECOMMEND** that Shemtov's Motion to Dismiss Indictment [Doc. 23] be **DENIED**

**SO ORDERED**, this 23rd day of August, 2022.

_____
Catherine M. Salinas
United States Magistrate Judge